# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **DAVID ADDISON BALL** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | )   **2:22-CV-01456-LSC** |
| **MARTIN O'MALLEY,** | ) |
| **Acting Commissioner of** | ) |
| **Social Security** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF OPINION

**I.   Introduction**

The Plaintiff, David Addison Ball, ("Ball" or "Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Ball timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ball was forty-nine years old when he applied for SSI benefits (tr. 42), and fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision (Tr. 37). He states he became disabled on March 1, 2015 at the age of forty-

three. (Tr. 169.) According to the ALJ, Ball completed high school. (Tr. at 42, 52.) Ball has no past relevant work experience. (Tr. at 42, 63.) He is 5'8" and has a BMI of 46.95.[1] (Tr. 531.) Ball attributes his disability to degenerative disc disease, depression, anxiety, dyslexia, hypertension, asthma, hyperlipidemia, obesity, and diabetes. (Tr. at 34-35, 169, 416, 433.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id.*

---

[1] Heights, weights, and BMIs have varied slightly in the record. Height ranges from 5'7" to 5'8", weight ranges from 296 to 309 pounds, and BMI ranges from 45.07 to 48.2 on the BMI scale. *See* tr. at 62, 169, 452, 531.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of his past relevant work ("PRW"). *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments

does not prevent him from performing his PRW, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id*. at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find him not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first established that Ball had not engaged in SGA since June 9, 2020, the date of his application for SSI benefits. (Tr. 34.) At step two, the ALJ determined that Ball's degenerative disc disease, depression, and obesity qualify as "severe impairments." (*Id*.) However at step three, the ALJ found that the combination of these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 35.)

The ALJ then, based on the entire record, determined that Ball had the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except that the claimant could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; the claimant should never climb ladders,

ropes, or scaffolds; the claimant could have only occasional exposure to extremes of cold or full body vibration; the claimant should have no exposure to hazards such as unprotected heights and hazardous machinery; the claimant would be able to understand, remember, and carry out simple instructions and tasks; the claimant can tolerate changes in the workplace that are infrequent and gradually introduced; the claimant can have occasional work-related interaction with supervisors and coworkers; the claimant should have no interaction with the general public; and the claimant would benefit from jobs that do not have strict production standards, but end of day requirements would be acceptable.

(Tr. 37.)

Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 43.) The VE indicated that Ball could perform work as a filters assembler, poly packer and heat sealer, or final inspector. (*Id.*) As a result of these findings, the ALJ concluded that Ball was not disabled from June 9, 2020 through November 22, 2021, the date of the decision. (Tr. 44.) Following the ALJ's decision, the Appeals Council declined Ball's request for review. (Tr. 1.)

## II.   **Standard of Review**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1)

whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894

F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022)).

**III. Discussion**

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ incorrectly evaluated the evidence and failed articulate her reasons for discrediting medical opinions, and (2) the failure to give weight, deference, or special consideration to certain medical opinions runs contrary to the purpose of the Social Security Act.

**a. Substantial Evidence**

Plaintiff alleges that the ALJ failed to articulately assess the "supportability" and "consistency" of various medical opinions in the record. (Doc. 10 at 20.) For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c

and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Under this new regulatory scheme, the ALJ is not required to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. 20 C.F.R. § 404.1520c.

Instead, the ALJ should focus on the persuasiveness of medical opinions by assessing the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors in evaluating medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(c)(1)-(5). While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, she is not required to do the same for the other factors. 20 C.F.R. §§ 404.1520c. In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent

> with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinions… will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 416.920c(c)(2).

If the above legal requirements are met, then the ALJ's determination will be upheld if it is supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Substantial evidence is relevant evidence, greater than a scintilla, that "a reasonable person would accept as adequate to support a conclusion." *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Winschel*, 631 F.3d at 1178).

### i. NP Keahey

Plaintiff argues that the ALJ erred in failing to address the consistency and supportability of NP Cherie Keahey's medical opinion. (Doc. 10 at 23-24.) Under 20 C.F.R. § 404.1520c, ALJs are required to articulate how persuasive they find all medical opinions in the case record. 20 C.F.R. § 404.1520c(b). The Commissioner's definition of a "medical opinion" is as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D)…
>
> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2). Although the ALJ referenced Plaintiff's visit to NP Keahey in discussing the onset of symptoms (tr. 38), the ALJ was not required to articulate the consistency and supportability of NP Keahey's

recommendations because they were not medical opinions within the Commissioner's definition.

Plaintiff initially visited NP Keahey in November of 2019 where he received treatment plans for his backpain, hypertension, depression, and obesity. (Tr. at 447-56.) Regarding the back pain, NP Keahey recommended that Plaintiff adopt a low sodium and low-fat diet, walk daily for twenty to thirty minutes, refrain from lifting, pushing, or pulling anything greater than 10 pounds, take prescribed medication, and to receive x-rays on his back within three weeks. (Tr. 454.) None of these recommendations mentioned anything about what Plaintiff could still do despite his impairments and they do not address Plaintiff's ability to work. *See* 20 C.F.R. § 416.913(a)(2). Following the initial visit, Plaintiff saw NP Keahey on two other occasions. (Tr. 457-75.) The second visit reviewed Plaintiff's back x-ray which displayed mild arthropathy in L3-5, but otherwise, there were no acute findings. (Tr. 457.) The treatment recommendations remained the same as the initial visit except for a request for an MRI. (Tr. 463.) The third visit with NP Keahey was not focused on back pain and included no treatment plan for that ailment. (Tr. 466-75.) When Plaintiff's MRI results were reviewed with Dr. Christopher Cole, Dr. Cole stated that the results were "not significant," and his recommended treatment was only to continue with prescribed medication. (Tr. 484.) Considering all of Plaintiff's

visits with NP Keahey, there were no medical opinions reflecting what Plaintiff could still do despite his impairments and no discussion on how his impairments would negatively affect his ability to work. Because NP Keahey's treatment recommendations are not medical opinions within the Commissioner's definition, the ALJ was not required to address the consistency and supportability of such recommendations.

### ii. Dr. Cole

Plaintiff contends that the ALJ erred as a matter of law in finding Dr. Cole's medical opinion unpersuasive, alleging that the ALJ dismissed Cole's opinion due to a short history of treatment and the form that it was provided on. (Doc. 10 at 24-25.) This argument fails because neither of these factors were dispositive reasons in dismissing Dr. Cole's opinion but were instead considerations in the ALJ's evaluation of the consistency and supportability of Dr. Cole's opinion.

Dr. Cole opined that Plaintiff would be able to sit or stand for less than thirty minutes at a time, would be off task 90% of the workday, and would miss fifteen days of work every month due to his low back pain, bulging disc, and arthritis. (Tr. 507.) The ALJ notes that Dr. Cole's opinion seems to be in a form created by Plaintiff's attorney that consists of mostly circled options, checked boxes, or one-word responses, but she never states that this reason alone

discredits the opinion. (Tr. 41.) Instead, this is a consideration in the supportability of Dr. Cole's opinion. The ALJ addresses the lack of supportability in the provided form because the form "gives the opinions expressed on this form limited probative value because there is no narrative support or insight into the reasons behind the conclusions." (*Id.*)

The ALJ further addresses the lack of consistency between Dr. Cole's opined limitations and the information in the record, including Dr. Cole's own treatment notes, as well as the MRI radiology report and the treatment notes of Dr. Cesar Munoz and NP Matthew Hall. (Tr. at 41, 508, 516, 532, 559, 564.) The ALJ specifically noted that these treatment records that contrast with Dr. Cole's drastic limitations indicate that "during the relevant period, the claimant has presented with largely unremarkable physical examinations and imaging has revealed mild findings." (Tr. 41.) Further, Dr. Cole's opined limitations directly contrast with the opinions of State consultants, Drs. Krishna Reddy and Alton James, that aggregate the mild imaging findings and unremarkable physical examinations to believe that Plaintiff should be limited to light exertional level work. (Tr. at 39, 170-81.)

Because the ALJ addressed the consistency and supportability of Dr. Cole's opinion, the legal standard of review under 20 C.F.R. § 404.1520c was met. Considering the lack of explanation in Dr. Cole's opinion itself and the

various inconsistencies between the opinion and the record as a whole, the decision to find Dr. Cole's opinion unpersuasive is supported by substantial evidence within the record which a reasonable person could reach the same conclusion. Accordingly, the ALJ did not err.

### iii. Mr. Harvey, LCSW

Plaintiff next argues that the ALJ erred as a matter of law in finding Mr. David Harvey, LCSW's medical opinion unpersuasive based on the same reasoning above regarding Dr. Cole's opinion. (Doc. 10 at 27.) Similarly, these arguments fail because neither the limited treatment history nor the form in which the opinion was drafted were dispositive reasons to disregard Mr. Harvey's opinion. Instead, the ALJ analyzed the short treatment history and opinion form in her consideration of Dr. Harvey's opinion.

Mr. Harvey completed a form that consisted of various "yes" or "no" questions. These responses included that Plaintiff could not understand, remember, or carry out very short and simple instructions; could not maintain attention, concentration, and pace for periods of at least two hours; could not perform activities within a schedule and be punctual; could not sustain ordinary routine without special supervision; could not adjust to routine and infrequent work changes; could not interact with supervisors and/or coworkers; or could not maintain socially appropriate behavior and adhere to

basic standards of neatness and cleanliness. (Tr. at 41, 506.) In complying with the regulatory requirements in evaluating medical opinions, the ALJ noted that supportability in Mr. Harvey's opinion was lacking due to short treatment history of only one prior visit and no clarification or explanation as to why Mr. Harvey circled "yes" or "no" to the questions. (Tr. 41.) She also stated that Mr. Harvey's opinion was inconsistent with the record as a whole. (*Id.*) In discussing consistency, the ALJ cites to various areas of the record revealing that Plaintiff had a GAF score of 90, suggesting significant functional ability, and that during the relevant period, Plaintiff had been feeling good or better regarding his depression. (Tr. at 38, 41, 510, 514, 519.) Additionally, in Plaintiff's initial consultation with Mr. Harvey, Mr. Harvey's treatment notes state that Plaintiff had a cooperative attitude, logical thought process, average intelligence, and cognition, insight, and judgment were all within normal limits. (Tr. 478.) The severity of Plaintiff's depression was noted as "moderate." (Tr. 479.)

      Considering the lack of supportability in Mr. Harvey's opinion and the inconsistencies between the opinion and various treatment notes throughout the record, including Mr. Harvey's own notes, the ALJ had substantial evidence to support her decision to find Mr. Harvey's opinion unpersuasive. Accordingly, the ALJ's determination regarding Mr. Harvey's opinion is without error.

### iv. Dr. Nichols

Plaintiff alleges that the ALJ provided no explanation or assessment of the supportability of Dr. June Nichols's opinion. (Doc. 10 at 29-30.) This argument fails because although the ALJ did not expressly use the words "support" or "supportability," it is clear that her decision to find Dr. Nichols's opinion unpersuasive was based on a lack of consistency and supportability. *See Lewno v. Kijakazi*, No. 8:21-cv-1334-SPF, 2022 WL 3999282, at *5 (M.D. Fla. Sept. 1, 2022) ("Use of [the words supportability or consistency] is not required, however, as long as the ALJ's findings were ultimately based on these factors."); *Thaxton v. Kijakazi*, No. 1:20-cv-616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.").

Dr. Nichols opined that Plaintiff could understand, remember, and carry out simple instructions and could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. at 42, 570.) Contrarily, Dr. Nichols's opinion also stated that Plaintiff could not maintain attention, concentration, and pace for periods of at least two hours; could not perform activities within a schedule and be punctual; could not sustain ordinary routine without special supervision; could not adjust to routine and

infrequent work changes; could not interact with supervisors and/or coworkers. (Tr. 570.) Further, Dr. Nichols believed that in addition to normal workday breaks, Plaintiff would be off task for 60-70% of an eight-hour day, and that Plaintiff would fail to report to work between twenty to twenty-five days in a thirty-day period due to his psychological symptoms. (*Id.*) Similar to the opinions of both Dr. Cole and Mr. Harvey, Dr. Nichols's opinion was on a form that required "yes" or "no" responses with no room to explain the responses, however this questionnaire was submitted attached with an evaluation form describing Dr. Nichols's consultation with Plaintiff. (Tr. at 42, 566-570.)

The ALJ questioned the supportability of Dr. Nichols's opinion based on limited treatment history between Plaintiff and Dr. Nichols, and the fact that the opined limitations are very severe despite Dr. Nichols's analysis that Plaintiff has adequate general knowledge, thought processes within normal limits, good judgment and insight, could understand, remember or carry out short simple instructions, and can maintain socially appropriate behavior. (Tr. at 42, 566-570.) The ALJ explicitly stated that Dr. Nichols's opinion was inconsistent with the record as a whole, specifically noting that "while claimant has presented with a depressed and/or anxious cognition/mood, as well as being distractible, displaying poor mental processing speed, and appearing to have problems with

memory . . . at other times the claimant has also presented with a normal mood, a cooperative attitude, fair or good judgment/insight, average intellectual functioning, preserved cognition, and an adequate fund of knowledge . . ." (Tr. 42.) Notably, three days after his consultation with Dr. Nichols, Plaintiff reported feeling "good" and "not anxious or depressed" after obtaining refills on his medication. (Tr. 510-511.)

Although the ALJ did not explicitly use the words "support" or "supportability" in her assessment of Dr. Nichols's medical opinion, the use of such words is not required. Because the ALJ addressed both supportability and consistency in evaluating the persuasiveness or Dr. Nichols's opinion, the requirements of 20 C.F.R. § 404.1520c were met. Moreover, the severe limitations opined by Dr. Nichols contrast with numerous opinions and treatment notes that imply Plaintiff's depression and mental competencies were adequately addressed in the ALJ's determination of Plaintiff's RFC. (Tr. at 37-43, 171-74, 178-79, 478, 504, 510, 512, 514, 519.) Thus, there is substantial evidence in support of the ALJ's decision to find Dr. Nichols's opinion unpersuasive in light of the entire record.

### b. Treating Physician Rule

Plaintiff argues that the ALJ should have deferred to or gave heightened weight to the opinions of his treating physicians because such weight would

align with the purpose and text of the Social Security Act. (Doc. 10 at 32.) This argument is contradictory to binding Eleventh Circuit precedent.

Prior to 2017, ALJs were required to apply what was known as "the treating physician rule." 20 C.F.R. § 404.1527(c)(2) (2015). The treating physician rule required ALJs to generally give more weight to medical opinions from treating physicians unless there was good cause not to do so. *Id*. In 2017, the Commissioner eliminated the treating physician rule and directed ALJs to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

While this Court recognizes Plaintiff's intent to preserve this issue for appeal in anticipation of cases currently before the Supreme Court (Doc. 12 at 16), the Eleventh Circuit has, on numerous occasions, explicitly rejected the argument that the purpose and text of the Social Security Act imply a need to grant special deference to the opinions of treating physicians. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022); *Smith v. Soc. Sec. Admin., Comm'r*, No. 22-11407, 2023 WL 6938521, at *5 (11th Cir. Oct. 20, 2023) ("[Claimant's] argument that the text and structure of 42 U.S.C. § 423(d)(5)(B) creates a clear congressional directive to use the treating-physician rule is simply an argument that § 404.1520c was manifestly contrary

to the Social Security Act."); Matos v. Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("[The] new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion.").

In *Harner*, the Eleventh Circuit's made clear that §404.1520c forbids ALJs from deferring or giving weight to any medical opinions, and that ALJs do not err when they refuse to give amplified weight to the opinions of treating physicians. *Harner*, F.4th at 898. Accordingly, the ALJ in Plaintiff's case did not err in refusing to give heightened consideration to the opinions of Plaintiff's treating physicians.

## IV. Conclusion

Upon review of the administrative record, and considering Ball's argument, this Court finds the Commissioner's decision is supported by substantial evidence and is AFFIRMED. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on June 5, 2024.

L. Scott Coogler
United States District Judge

215708